UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JULIA MICHELLE SEAL, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 6:13-cv-02283-MHH |
| } | |
| CAROLYN W. COLVIN, } | |
| Commissioner, } | |
| Social Security Administration, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g) and § 1383(c), Julia Michelle Seal seeks judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of the Administrative Law Judge ("ALJ") who denied Ms. Seal's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. Because substantial evidence supports the ALJ's decision, the Court affirms the Commissioner's ruling.

**STANDARD OF REVIEW**:

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close

scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**PROCEDURAL AND FACTUAL BACKGROUND:**

On January 14, 2011, Ms. Seal applied for a period of disability, disability insurance benefits, and supplemental security income benefits. (Doc. 8-7, pp. 2-15). The Social Security Administration denied Ms. Seal's application on

February 24, 2011.  (Doc. 8-5, pp. 2-3).  At Ms. Seal's request, on February 29, 2012, an Administrative Law Judge conducted a hearing concerning Ms. Seal's application.  (Doc.8-4, pp 30-67).  Ms. Seal and an impartial vocational expert testified at the hearing.  (Doc. 8-4, p. 31).  At the time of his hearing, Ms. Seal was 38 years old.[1]  (Doc. 8-4, p. 36).  Ms. Seal completed her GED, and she had a cosmetology license.[2]  (Doc. 8-4, p. 50).  Her past relevant work experience is as a cosmetologist, a sewing machine operator, a bundler, a house cleaner, a cashier, a telemarketer, and a telephone service operator. (Doc. 8-4, pp. 50-51, 62).

In December 2010, Ms. Seal fell from a porch and injured both of her ankles.  After surgery on both ankles, Ms. Seal gained more than 50 pounds.  (Doc. 8-4, p. 36-37).  Ms. Seal has eight screws and a plate in one ankle that she claims is "still broken."  (Doc. 8-4, p. 37).  She also suffers from depression and has a pinched nerve.  (Doc. 8-4, p. 37).  At the time of the hearing, Ms. Seal was seeing no physicians other than an orthopedic doctor who treated her ankle injuries.  (Doc. 84-4, p. 42-44).

---

[1] At 38 years of age, 20 C.F.R. §404.1563(c) designates Ms. Seal as a "younger person," whose age will not seriously affect her capacity to find work.

[2] Ms. Seal's cosmetology license has expired.  (Doc. 8-4, p. 50).

On April 6, 2012, the ALJ denied Ms. Seal's request for disability benefits.[3] (Doc. 8-4, pp. 14-25). In his decision, the ALJ found that Ms. Seal had not "engaged in substantial gainful activity since January 6, 2009, the alleged onset date." (Doc. 8-4, p. 16). In addition, the ALJ concluded that Ms. Seal "has the following severe impairments: bilateral ankle fractures []; obesity; major depressive disorder; adjustment disorder; and opioid dependence." (Doc. 8-4, p. 16). The ALJ found that "these impairments result in more than minimal limitation in [Ms. Seal]'s ability to perform work-related activities." (Doc. 8-4, p. 16). The ALJ also concluded that Ms. Seal suffers from the following non-severe impairments: otalgia, bronchitis, finger laceration, scalp laceration, back sprain, scabies, conjunctivitis, pharyngitis, and carpel tunnel syndrome. (Doc. 8-4, p. 17). The ALJ found that Ms. Seal's mental impairments "do not meet or medically equal the criteria of listings 12.04 and 12.06." (Doc. 8-4, p. 18).

Based on these factual findings, the ALJ concluded that Ms. Seal has the "residual functional capacity: [] to perform light work; [] never climb ladders, ropes or scaffolds; avoid concentrated exposure to extreme cold, heat, wetness, and humidity; [] avoid all exposure to unprotected heights, dangerous machinery, uneven surfaces, large bodies of water, and commercial driving; [] perform

---

[3] The Court reviewed not only the ALJ's decision, but also Ms. Seal's medical records. The Court found that the ALJ's description of Ms. Seal's medical evaluations is accurate. In a number of instances in this opinion, the Court has provided citations not only to the ALJ's decision but also to the underlying medical records to illustrate that there is no discrepancy between the two.

4

unskilled, low stress work; and [] occasionally interact with members of the general public, supervisors, and coworkers." (Doc. 8-4, p. 19). The ALJ determined that Ms. Seal may perform her past relevant work as a sewing machine operator and bundler. (Doc. 8-4, p. 23). The ALJ concluded that based on Ms. Seal's age, education, work experience, and RFC, jobs exist in the national economy that Ms. Seal can perform including ticket marker, mail sorter, and packager. (Doc. 8-4, pp. 23-24). Consequently, the ALJ determined that Ms. Seal is not disabled as that term is defined in the Social Security Act. (Doc. 8-4, p. 24).

On October 22, 2013, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration when the Appeals Council refused to review the ALJ's decision. (Doc. 8-3, pp. 2-8). Having exhausted all administrative remedies, Ms. Seal filed this action for judicial review pursuant to §205(g) and §1631(c)(3) of the Social Security Act. *See* 42 U.S.C. §405(g) and §1383(c)(3).

**ANALYSIS**:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. 929, 930 (11th Cir. 2013). "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing

42 U.S.C. § 423(d)(1)(A)).  A claimant must prove that he is disabled.  *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis.  *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted).  "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Ms. Seal argues that she is entitled to relief from the ALJ's decision because: (1) the ALJ erred in relying solely on the state agency examiner's mental capacity evaluation, and (2) the ALJ failed to include a sit/stand option in his first hypothetical posed to the vocational expert.  (Doc. 11, p. 13).  The Court considers these arguments in turn.

### A. The ALJ Properly Relied on the State Agency Examiner's Mental Capacities Evaluation

Ms. Seal argues that the ALJ erred by relying solely on the opinion of state agency psychological consultant Dr. Samuel Williams as substantial evidence of Ms. Seal's mental impairments to determine her residual functioning capacity. (Doc. 11, pp. 13-14). Ms. Seal contends that Dr. Williams's opinion is insufficient to support the ALJ's residual functioning capacity finding because Dr. Williams is a non-examining physician. (*Id.*). Ms. Seal's arguments are without merit.

The Eleventh Circuit has recognized that the "opinions of nonexamining, reviewing physicians, when contrary to the opinion of a treating physician, are entitled to little weight and do not, 'taken alone, constitute substantial evidence.'" *Gray v. Comm'r of Soc. Sec.*, 2013 WL 6840288 *3 (11th Cir. Dec. 30, 2013) (per curiam) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). In this case, however, the ALJ found that Dr. Williams's opinion was consistent with the opinion of Ms. Seal's treating psychiatrist. In making his RFC determination, the ALJ considered not only Dr. Williams's opinion, but also Ms. Seal's treating psychiatrist's notes and Ms. Seal's own testimony. (Doc. 8-4, pp. 21-23).

Dr. Williams opined that Ms. Seal has mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Doc. 8-12, p. 101). Dr. Williams also opined that Ms. Seal either was not significantly limited or moderately limited

7

in understanding and memory; sustained concentration and persistence; social interaction; and adaption.  (Doc. 8-12. pp. 105-106).  Dr. Williams concluded that Ms. Seal can "understand, remember, and complete short, simple, 1- to -2-step tasks, but not those that are longer or more detailed."  (Doc. 8-12, p. 107).  Dr. Williams also concluded that Ms. Seal can "complete an 8-hour workday, provided all customary breaks from work are provided," and she can make "simple, short-term work-related decisions."  (Doc. 8-12, p. 107).  According to Dr. Williams, Ms. Seal can "tolerate non-intense interaction with members of the general public," and she "is likely to do best working with a small number of familiar co-workers."  (Doc. 8-12, p. 107).  Additionally, Dr. Williams suggested that changes to Ms. Seal's work environment or expectations "should be infrequent and introduced gradually."  (Doc. 8-12, p. 107).

The ALJ found that Dr. Williams's opinion is supported by Ms. Seal's treating psychiatrist's treatment notes.  (Doc. 8-4, p. 23).  The ALJ carefully reviewed Ms. Seal's treating psychiatrist's findings.  (Doc. 8-4, pp. 21-22; Doc. 8-9. pp. 3-12; Doc. 8-13, pp. 90-97).  Ms. Seal began mental health treatment in September 2009.  Her treating psychiatrist diagnosed Ms. Seal with major depressive disorder and an adjustment disorder with depressed mood.  The treating psychiatrist assigned Ms. Seal a global assessment of functioning (GAF) score of 50.  (Doc. 8-4, p. 21; Doc. 8-9, p. 12).  By October 2009, Ms. Seal reported that

she was "feeling better" and "looking forward to her new job."  (Doc. 8-9, p. 8). At that time, Ms. Seal had a GAF score of 55.  (Doc. 8-9, p. 8).

In February 2010, Ms. Seal reported that she was "doing good" and was looking for a new job.  (Doc. 8-9, p. 6).  Ms. Seal also reported that her medications were working.  (Doc. 8-9, p. 6).  During visits in August and September 2010, Ms. Seal told her psychiatrist that she still had "a lot of anxiety" and "stress."  (Doc. 8-9, pp. 3-4).  As noted by the ALJ, despite reporting fluctuating systems, Ms. Seal's psychiatrist did not change Ms. Seal's diagnoses or adjust her GAF score until August 2010, when the psychiatrist returned her GAF score to 50 and increased her Wellbutrin dosage.  (Doc. 8-4, p. 21; Doc. 8-9, p. 4).

After a gap in treatment, Ms. Seal returned to her psychiatrist in February 2011.  (Doc. 8-13, p. 97).  At that time, Ms. Seal was clinically stable and had a GAF score of 60.  (Doc. 8-13, p. 97).  Ms. Seal reported continued problems with anxiety and depression; however, in July and August 2011, Ms. Seal was "feeling well" and remained clinically stable.  (Doc. 8-13, pp. 92-93).  In July 2011, Ms. Seal's psychiatrist assigned a GAF score of 65 and explained that Ms. Seal had good judgment, insight, and concentration.  (Doc. 8-4, p. 24; Doc. 8-13, p. 94).

Although the ALJ adopted Dr. Williams's mental assessment, the ALJ did so after recounting Ms. Seal's mental health treatment history and explaining why Dr.

Williams's opinion was consistent with Ms. Seal's treating psychiatrist's treatment notes.

On a related note, the ALJ assessed Ms. Seal's opiate dependency and concluded that her addiction is not material to the RFC determination but "diminishes [her] subjective complaints or pain." (Doc. 8-4, p. 22). The ALJ found that "it is difficult to determine whether Ms. Seal's frequent requests for pain medication are truly due to pain or mere drug seeking behavior." (Doc. 8-4, p. 22).

Accordingly, M.s Seal's criticisms of the ALJ's reliance on the state agency examiner's mental capacity evaluation are without merit. Substantial evidence supports the ALJ's decision to deny benefits. *See e.g.*, *Wilkinson v. Comm'r of Soc. Sec.*, 289 Fed. Appx. 384, 386 (11th Cir. 2008) (per curiam) ("The ALJ did not give undue weight to the opinion of the non-examining state agency physician because he did not rely solely on that opinion."); *Ogranaja v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 848, 850-51 (11th Cir. 2006) (per curiam) (noting that an ALJ may consider reports and assessments of state agency physicians as expert opinions and finding that the ALJ's decision was supported by substantial evidence because the ALJ "arrived at his decision after considering the record in its entirety and did not rely solely on the opinion of the state agency physicians.").

Contrary to Ms. Seal's contention, the ALJ was not under a duty to order Ms. Seal's treating psychiatrist or an independent physician to perform a mental capacities evaluation. Ms. Seal argues that under *McCright v. Colvin*, 2014 WL 1513290 (N.D. Ala. April 11, 2014), the ALJ should have required an examining physician's evaluation because Ms. Seal's alleged mental impairment is "broad, complex, and/or ongoing." (Doc. 11, p. 13). The claimant in *McCright* had persistent physical ailments and a "complex medical history." *McCright*, 2014 WL 1513290, at *5. Here, Ms. Seal's mental health treatment notes suggest that her depression and anxiety are controlled with medication. Also unlike *McCright*, the ALJ did not reject the opinion of Ms. Seal's treating physician regarding her mental impairments. Rather, the ALJ noted that Ms. Seal's treating psychiatrist's treatment notes were consistent with Dr. Williams's opinion regarding Ms. Seal's mental limitations. "A consultative examination was not necessary for the ALJ to make an informed decision" regarding Ms. Seal's mental limitations because the record "was fully and fairly developed" and included the state agency examiner's formal mental capacities assessment, which the ALJ found was consistent with Ms. Seal's mental health treatment history. *See Castle v. Colvin*, 557 Fed. Appx. 849, 853 (11th Cir. 2014).

### B. The ALJ Did Not Err by Failing to Include a Sit/Stand Option in the Light Work Hypothetical to the ALJ

A claimant bears the burden of proof to show that she cannot perform her past relevant work as it was previously performed or as the job is generally performed in the national economy. *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991). To determine whether a claimant is able to perform her past relevant work, the ALJ uses the residual functioning capacity assigned to a claimant to pose hypotheticals to a vocational expert about possible work that a claimant can complete. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). For the testimony of a vocational expert "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). An ALJ is not required to "include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

Ms. Seal contends that the ALJ erred by failing to include a sit/stand option in his first hypothetical to the vocational expert. (Doc. 11, pp. 14-15). She argues that under SSR 83-12, 1983 WL 31253 (Jan. 1, 1983), an ALJ should consult a vocational expert to clarify the availability of sit/stand jobs at the unskilled level. However, the ALJ did not include a sit/stand limitation in his RFC determination.

(Doc. 8-4, p. 19).[4] No treating or reviewing physician observed or opined that Ms. Seal required a sit/stand limitation. Ms. Seal relies on her personal statements to the ALJ to establish that she had a sit/stand limitation. (Doc. 11, p. 14; *See* Doc. 8-4, p. 20; Doc. 8-4, p. 54). The ALJ reviewed Ms. Seal's treatment for her ankle pain and found that the objective medical evidence did not show that Ms. Seal's symptoms were as debilitating as she alleged. (Doc. 8-4, p. 20). The ALJ based this finding on treatment notes from at least two physicians. In Feburary 2011, six weeks after surgery to repair her broken ankle, Dr. J. Patrick Boyett explained that Ms. Seal would be able to tolerate weight-bearing on her left ankle in the near future if she showed signs of healing. (Doc. 8-4, p. 20; Doc. 8-12, p. 89). The record contains no evidence that Ms. Seal returned to Dr. Boyett for treatment. Ms. Seal's primary care physician, Dr. Farouk Raquib, examined Ms. Seal on several occasions in early 2011. Dr. Raquib diagnosed Ms. Seal with chronic left ankle pain. (Doc. 8-12, p. 111-117). By August and September 2011, Ms. Seal reported no ankle pain, and Dr. Raquib's examination of Ms. Seal's extremities was "unremarkable." (Doc. 8-4, p. 20; Doc. 8-12, p. 111-112). An x-ray in January 2012 revealed "no acute bony fracture or dislocation," and "no acute process." (Doc. 8-13, p. 70).

---

[4] Although Ms. Seal challenged the ALJ's findings concerning her mental RFC, Ms. Seal does not challenge the ALJ's determination regarding her physical RFC.

13

In addition to the medical evidence, the ALJ noted that Ms. Seal's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functioning capacity assessment." (Doc. 8-4, p. 19). The ALJ also noted that Ms. Seal's description of her daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Doc. 8-4, p. 22). For example, the ALJ explained that Ms. Seal lives alone, raises her 12 year old daughter, cares for her pets, independently cares for her personal needs, folds clothes, cooks, and grocery shops. Also, the ALJ noted that "the record contains evidence that [Ms. Seal] has worked as a hairdresser, a job requiring 'standing all day,' at various times since the alleged onset date of disability, which indicates that [Ms. Seal's] activities have, at least at times, been greater than she has alleged." (Doc. 8-4, p. 22). Substantial evidence supports the ALJ's finding that the record does not support Ms. Seal's allegations regarding limitations associated with her ankle pain. *Crawford*, 363 F.3d at 1158. The ALJ's hypothetical question to the VE encompassed all of Ms. Seal's impairments that were supported by the record. *See id.*

**CONCLUSION**:

For the reasons explained above, the Court finds that the ALJ's decision was based upon substantial evidence and consistent with applicable legal standards. Accordingly, the Court affirms the decision of the Commissioner.

The Court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 25, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE